IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

NIYA HARRIS                                                                         PLAINTIFF

v.                                                               No. 4:10cv80-DAS

GREENVILLE RIVERBOAT, LLC,
TROPICANA ENTERTAINMENT, LLC, &
CALVIN BROWN                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the court are defendants' motion for summary judgment (# 110); defendants' motion to strike (# 132); and the plaintiff's motion to reopen discovery (# 137). The court has considered the submissions of the parties, the record, and the applicable law and rules as follows:

## I. FACTS

Lighthouse Point Casino operates a casino on the Mississippi River in Greenville, Mississippi. On June 18, 2007, the casino hired Niya Harris to work in the housekeeping department. Lighthouse had a policy that prohibited casino employees from speaking on personal cell phones on the casino floor. When the casino hired Harris, it explained its policy against personal cell phone use on the casino floor. Harris also received a memo concerning Lighthouse's policy regarding personal cell phone usage. Specifically, the Memorandum provided:

> Use of [sic] personal wireless phone while on duty is prohibited. Any employee that is seen using their personal wireless phone on the casino floor or any restaurant employee in the restaurant during working hours will receive disciplinary action up to and to include termination.

Harris signed this policy on June 18, 2007, indicating "I have read and understand the above policy."

Harris alleges that soon after the casino hired her, Calvin Brown, Lighthouse's Head of Security, began sexually harassing her, asking to have sex with her and offering to pay her for sex. Harris further alleges that she told Brown his conduct was against casino policy and asked him to stop. Harris further alleges that she reported the sexual harassment to her superiors.

At the time of Harris's hire and routinely thereafter, she received Lighthouse's Sexual Harassment Policy. The policy prohibits harassment among employees on the basis of sex. Additionally, the policy provides that employees who feel they are being harassed should contact their General Manager or the personnel office in Kentucky for a confidential interview and that a confidential investigation will be undertaken immediately. It further provides that any employee "found . . . to have sexually harassed another . . . or violated [the] sexual harassment policy will be subject to disciplinary action up to and including discharge of the offending" employee. On August 5, 2009, Lighthouse held a mandatory sexual harassment training, and both Harris and Brown attended the meeting.

Shortly after she began working for the casino, Harris began receiving written warnings. On August 11, 2009, Harris acknowledged that she received a final written warning for "insubordination to a director [on] 8-06-09."[1] Glynda Williams, Manager of Housekeeping, and

---

1 Lighthouse had a policy against employees drinking beverages on the casino floor. Brown reported that Harris was preparing a drink on the third floor and continued with her action despite being reminded of the policy against such conduct. Brown reported that he told Harris she could not prepare and drink a soda in the gaming area and that "she stated that you didn't [sic] have nothing [sic] to do with what she does." During her deposition Harris denied that Brown ever

Roslyn Hinton, Lighthouse's Head of Human Resources, discussed the matter with Harris and told her that any further infraction could result in disciplinary action up to including termination."[2]

On August 12, 2009, Harris contacted Hinton and reported that she had been sexually harassed by Brown.[3] During this conversation with Hinton, she requested a meeting with Lighthouse's General Manager, Tess Ingram. While Hinton testified she immediately informed Ingram about Harris's report and request for a meeting, Ingram testified that Hinton did not inform her about Harris's report or request. Hinton further testified that she questioned Jeraldine Smith (Harris's supervisor), Brown, and Glynda Williams about Harris's accusation, but that she did not take any written statements or record any of those conversations. There was no formal investigation into Harris's allegations.

On August 16, 2009, the casino terminated Harris. On a Record of Discussion, Glynda Williams recorded the following:

> On the 8-16-09[,] Niya Harris enter [sic] the Casino on her cell phone[.] I told her that you are not suppose[d] to be on your cell on property[.] She look[ed] at me and statet [sic] that I am not on the clock[.] I told her you still not suppose[d] to be on it[.] She keep [sic] walking and talking on it.

---

admonished her about the policy; however, she admitted that she was drinking water (not soda) and that she was drinking it because there was no water in the break room.

2 Jeraldine Smith was Harris's immediate supervisor. The casino subsequently terminated Smith for insubordination and poor job performance. A Lighthouse Record of Discussion indicates that when Brown asked Smith to address Harris's alleged violation she responded that she also drank beverages in the gaming area.

3 Hinton testified that Harris told her Brown asked Harris's mother out on a date and that Harris felt that Brown's conduct was sexual harassment. Hinton Dep. at 42-43.

Harris refused to sign the Record of Discussion and made no comment on it. Williams terminated Harris for "[i]nsubordination-failure to get off personal cell phone when ask [sic]."[4] Roslyn Hinton concurred in the decision to fire Harris.

During her deposition, Harris testified that she arrived at work early that day and was in uniform at the time Williams confronted her. Harris said Williams verbally reprimanded her for being on the phone while "on the clock." Harris responded by telling Williams she was "not on the clock yet." Harris further testified that after this statement to Williams, she told the person on the phone that she would call them back, dropped the phone in her pocket, "kept walking down the stairs to the break room." Harris continued to the break room but was summoned by Williams and fired before she could clock in.

On August 20, 2009, Harris filed her claim for unemployment with the Mississippi Department of Employment Security ("MDES"). On August 21, 2009, MDES mailed a Notice to Employer of Claim Filed and Request for Information to Lighthouse. The notice informed Lighthouse of Harris's claim for Unemployment Insurance Benefits and required that it submit a response by August 26, 2009. The notice contained a warning that failure to complete and return the attached form in a timely manner could cause Lighthouse's account to be charged if it were determined that the claimant was eligible for benefits.

On September 1, 2009, Lighthouse responded to the Request for Information, indicating under reason for separation, "Discharge/Fired Labor" and explaining that Harris's employment

---

4 The Personnel Action form documenting Harris's termination indicates that her "last day worked" was August 15, 2009.

was terminated for "[i]nsubordination-using personal cellphone [sic] on casino floor[;] failed to stop using it wen aske [sic] by her manager. She was already on a final written warning to [sic] insubordination." On September 10, 2009, MDES contacted Harris by mail, requesting additional information. The notice contained the following warning: "**IF YOU DO NOT RESPOND, A DECISION WILL BE MADE BASED ON THE AVAILABLE INFORMATION**."

On September 16, 2009, MDES notified Harris that she was not qualified to receive Unemployment Insurance Benefits. The notice provided the casino's explanation that she had been discharged for using her cell phone when she should have been working. The notice further provided that this reason was considered "misconduct" connected with Harris's work. The notice also pointed out that Harris had failed to respond to a request for more information regarding this issue and that she would be "disqualified from receiving Unemployment Insurance Benefits beginning 08/20/09." Finally, the notice provided that if Harris disagreed with the decision, "an appeal or reconsideration must be filed no later than 09/30/2009."

During her deposition, Harris testified that she never received the MDES notice requesting more information. In her affidavit she states she made her initial application with MDES over the phone on or about August 20, 2009. Harris's affidavit further provides that during the phone conversation, she told MDES personnel her mailing address was 542 South Hinds Street, Greenville, MS, 38701. However, the Initial Claim for Benefits form in Harris's MDES file indicates that a different address, 542 South *Pine* Street, Greenville, MS 38701, was recorded instead. During her deposition Harris testified that she used her mother's address, 542 South

Hinds Street, as her mailing address from the time the casino fired her until she applied for unemployment benefits. Additionally in her affidavit, Harris explains she is not certain when her mother gave her the September 16, 200 notice, but she had less than one week to file any appeal before the deadline noted on the document, September 30, 2009.

Harris appealed the MDES decision on September 18, 2009.[5] Following a telephonic hearing before an administrative law judge on February 23, 2010, the initial denial was reversed and Harris was awarded unemployment benefits.[6] Harris filed a Charge of Discrimination before the EEOC on March 24, 2010 on the bases of sexual harassment and retaliation.[7]

## II. DISCUSSION

### 1. Motion to Strike

Harris submitted her own affidavit in support of her response to the defendants' Motion for Summary Judgment. The defendants seek an order striking portions of that affidavit and "any portions of Harris's Response to Defendants' Motion for Summary Judgment" that relies on that affidavit. The defendants charge that Harris's affidavit is improper under Rule 56 because it

---

5 Harris attached a copy of an MDES "Acknowledgment of Appeal Filed" to her response to the motion for summary judgment. The form indicates that it was mailed to Harris on September 21, 2009. Also, the form lists Harris's address as 542 S. Hinds St., Greenville, MS 38701-4619.

6 The ALJ found that there was no evidence that the written warning Harris received for insubordination on August 11, 2009, was related to the "no cellular phone policy" and that Harris's conduct did not rise to the level of insubordination because there was no proof she "consistently and continually refused to follow orders of her supervisor."

7 In the Charge, Harris stated she was discharged on August 19, 2009.

contains statements that are unsupported, irrelevant, conclusory, speculative and inconsistent with her prior sworn testimony.

The defendants argue that portions of Harris's affidavit directly contradict her prior sworn deposition testimony. Specifically, the defendants charge that Harris's affidavit "is in direct contradiction to her prior sworn testimony that she had never had any emotional problems, and that all of her medical and emotional problems are reflected in her medical records." In her affidavit Harris states: "Because of the sexual harassment of Calvin Brown and also due to the Lighthouse Point contesting my unemployment benefits, I have had serious problems sleeping." Harris explains that she did not mention this problem to her doctors because: "I don't need to have a doctor tell me why I cannot sleep. I cannot sleep because I am worried I don't have enough money to take care of my kids."

During Harris's deposition, the following colloquy took place:

Q. Other than these health problems that we've discussed, have you had any other health problems?
A. No.
Q. Have you had any emotional problems?
A. No.
Q. So all of the health or other medical or emotional issues that you might have had would be reflected in the doctor's reports that we've been talking about?
A. Yes.
Q. Do you take aspirin on a regular basis?
A. I take Tylenol, Tylenol PM.

"In considering a motion for summary judgment, a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition." *Kennett-Murray Corp., v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980). The court finds that read in the light most favorable to the non-movant, the statements singled out by

the defendants here do not directly contradict Harris's prior deposition testimony. First, the defendants points out that: "Harris agrees that in all of her visits to the doctor, she has never complained about anxiety or stress." However, in her affidavit, Harris is not changing her story by claiming that she did report anxiety or stress to doctors or that her doctors failed to record such reports.[8] Instead, Harris attempts to supplement her prior testimony by adding that she suffered from problems sleeping for which she did not feel she needed to see a doctor. Moreover, during Harris's deposition, defense counsel asked Harris whether she experienced any "emotional problems" as a follow-up question to questions about a variety of health and medical problems reported in her medical records. Defense counsel did not define what he meant by "emotional problems" during the deposition – nor did he directly ask Harris whether she suffered any *emotional distress* as a result of the defendants' alleged acts. "When an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment." *S.W.S. Erectors v. Infax, Inc.*, 72 F.3d 489, 496 (citing *Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir. 1988)). It is at least plausible that Harris did not mention her sleeping problem during her deposition because defense counsel did not define what he meant by "emotional problems" and because he asked about "other emotional problems" in the context of health problems for which Harris had sought medical attention. Finally, this issue is more appropriately one of credibility, which is reserved for the jury.[9] However, as will be shown

---

8 Indeed, at an earlier point in her deposition Harris affirmed that she "[n]ever felt like . . . [she] needed to see a doctor for emotional distress after being terminated by Lighthouse." Harris Dep. at 14, line 7-11.
9 *See Kennett-Murray Corp.*, 622 F.2d 894 ("In light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with

more fully below, the issue regarding Harris's inability to sleep is not material to the issues now before the court. *See S.W.S. Erectors*, 72 F.3d at 496. Therefore, the court will not strike the foregoing statements.

Next, the defendants argue the court should strike a statement in Harris's affidavit because it is conclusory, based only on Harris's subjective belief, and consists of legal arguments and conclusions. In her affidavit Harris states: "Mr. Brown got me fired from my job for reporting him for sexual harassment, and the Lighthouse Point stopped my unemployment benefits."[10] Because this entire statement is conclusory and lacks sufficient factual bases, the court agrees it should be stricken. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Shaffer v. Williams*, 794 F.2d 1030, 1033 (5th Cir. 1986). *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Evans v. Technologies Applications and Serv. Co.,* 80 F.3d 954, 962 (4th Cir. 1996) (affirming district court's ruling striking portions of affidavit submitted by plaintiff in opposition to summary judgment where portions of affidavit included self-serving and unsupported assertions without objective corroboration; statements not based on personal knowledge; and statements that were hearsay, irrelevant, or conclusory). Accordingly, this portion of Harris's affidavit should be stricken, and the defendants' motion to strike is granted in part and denied in part.

---

statements made in an earlier deposition.").

10 This is the only other statement in the plaintiff's affidavit for which the defendant offers argument.

## 2. Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating that there are no genuine issues of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court "view[s] the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Riverwood Int'l Corp. v. Employers Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005).

### A. Title VII Claims

#### a. Sexual Harassment & Retaliatory Discharge

Harris began work at Lighthouse on June 18, 2007. Harris alleges that from the outset of her employment until her termination on August 16, 2009, Brown sexually harassed her. Harris also claims the casino fired her in retaliation for complaining about Brown's alleged sexual harassment. Harris filed her charge before the EEOC on March 24, 2010, 220 days after the date of her discharge and the last day of Brown's alleged harassment. The charge contained a statement of each of these claims.

Under Title VII, it is unlawful for an employer to "discriminate against" an employee "because [she] has opposed any practice made an unlawful employment practice" by Title VII or "because [she] has made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e–3 (a). "A Title VII claimant must file charges with the EEOC within 180 days after the alleged illegal conduct. This time limit operates as a statute of

limitations." *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999). In the present case, Harris filed her charge before the EEOC 220 days from the date of her discharge. Thus, Harris's sexual harassment and retaliatory discharge claims are time barred. In her response to the instant motion for summary judgment, Harris concedes that her sexual harassment claim is time barred. Additionally, Harris has failed to come forth with any summary judgment evidence creating an issue of material fact with regard to her retaliatory discharge claim. Thus, the defendants are entitled to summary judgment as to these claims.

### b. Retaliatory Opposition to MDES Application

Here, Harris charges that Lighthouse retaliated against her by opposing her claim for unemployment benefits before the MDES. The defendants make several arguments in response to this claim. Among other things, the defendants argue that the claim is timed-barred because Harris failed to file her charge within 180 days "from when she knew or should have known that Lighthouse was contesting the claim." The defendants initially argued that this date was no later than September 19, 2009, three days after the date of the MDES "Notice of Nonmonetary Determination."[11] However, Harris argues that the earliest date on which she could have known that Lighthouse was opposing her application was September 25, 2009. In her affidavit, Harris claims she did not receive the "Notice of Nonmonetary Determination" until September 25, 2009. Harris states that she is "sure" that when she finally received this notice, she had less than one week

---

11 The defendants also argue that Harris knew Lighthouse would oppose her application for unemployment benefits when she left employment because Lighthouse opposed the unemployment application of Jeraldine Smith, who had been terminated for cause prior to Harris's discharge. During her deposition, Harris testified that she had no idea Lighthouse would contest her application until she received the September 16, 2009 MDES notice.

before the September 30, 2009 deadline to file her appeal.[12]  *See* Harris Affidavit and Harris Dep. at 58-60.   Harris does not present any evidence in support of this claim other than her own assertions.  Harris has submitted documentary evidence from her MDES file, however, that indicates she actually received the notice and initiated her appeal before September 25, 2009.

Specifically, the "ALJ Appeal Decision" and other forms from Harris's MDES file show that she filed her appeal on September 18, 2009.  An "ALJ Appeal Information" also indicates this appeal date and lists the reason for the appeal as: "I disagree with the decision."   Additionally, an "Acknowledgment of Appeal Filed" was mailed to Harris on September 21, 2009.[13]   Based on these documents, it appears that Harris submitted the self-serving assertions in her affidavit in an attempt to create a material issue of fact.   The court will, therefore, disregard that portion of Harris's affidavit that states she received the notice somewhere around September 25, 2009 (which is exactly 180 days before she filed her EEOC charge).   *See In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000).

Because Harris received notice that Lighthouse was opposing her application for unemployment benefits no later than September 18, 2009, this is the date on which the 180-day limitations period began running.   Accordingly, Harris was required to file her EEOC charge on or before March 17, 2010.[14]   Therefore, Harris's EEOC charge was filed 7 days too late, and this retaliation claim is time barred.

---

12 In her Response brief, Harris alleges that after she received the MDES notice, she "immediately called MDES . . . to appeal the determination against her."

13 This form shows the S. Hinds Street address for Harris.

14 In her Response brief, Harris proffers March 22, 2010, as the date on which she "submitted" her charge to the EEOC.   Even if the court were to accept this date as the date of "filing," Harris's

In the alternative, the court finds that even if Harris's claim were not time barred, the summary judgment evidence before the court shows she has failed to establish a prima facie case of discrimination. The defendants argue that Harris cannot satisfy her prima facie burden to show that she (1) suffered an adverse employment action or (2) that there is a causal nexus between the denial of her benefits and her complaints of sexual discrimination. Specifically, the defendants argue that Harris suffered no adverse employment action because MDES eventually approved her claim for unemployment benefits after she provided the requested information. Further, the defendants argue there is no evidence that Hinton bore any ill will toward Harris or that she opposed the claim for unemployment benefits because Harris complained about sexual harassment.

Harris's retaliation claim is governed by the *McDonnell Douglas* burden-shifting framework. Under that framework, Harris must first establish a prima facie case of retaliation by showing that (1) "[s]he participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007). After making such a showing, the defendants must articulate legitimate, nondiscriminatory reasons for its employment action. *Id*. If the defendants articulate such reasons, the burden falls back on Harris to show that the defendants' proffered reason is a pretext for its actual retaliatory purpose. *Id.*

---

claim is still time barred.

The parties do not dispute that Harris participated in a protected activity. Next, the court looks to whether Harris suffered an adverse employment action. In *Burlington Northern v. White*, the Supreme Court held:

> The anti-retaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm . . . . [A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

*Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67-68 (2006) (quoting *Rochon v. Gonzales,* 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

In this case, Harris rests her retaliation claim on Lighthouse's opposition to unemployment benefits, which she asserts was based on a false claim that she disobeyed work rules and was insubordinate. On August 21, 2009, MDES mailed a "Notice To Employer of Claim Filed And Request for Information" to Lighthouse. The form informed Lighthouse of Harris's claim for unemployment insurance benefits and required that it respond with certain information, including the reason for Harris's termination, by August 26, 2009. Next, under Mississippi law, an employer may successfully challenge a terminated employee's application for unemployment benefits if it can meet its burden of showing the employee was discharged for misconduct. *See* MISS. CODE ANN. 71-5-513(A)(1)(b)-(c). The form also contained a warning that failure to return it in a timely manner may cause its account to be charged if it were determined that the claimant was eligible for benefits. Accordingly, Lighthouse was obligated to respond to MDES's request for information and provide the reason for Harris's termination. Ultimately, it was Harris who initiated the unemployment application process--not Lighthouse-- and Lighthouse merely

14

responded as required. Therefore, Lighthouse's opposition to Harris's unemployment benefits was not retaliatory in nature, and the plaintiff did not suffer an adverse employment action. *See Baker v. Summit Unlimited, Inc.*, 855 F. Supp. 375, 376-77 (N.D. Ga. 1994) (finding no adverse employment action where employer opposed unemployment compensation of plaintiff but was obligated to respond under state law).

Finally, even assuming that Harris established a prima facie case of retaliation, her claim is without merit. The burden of production is now on the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. Here, Lighthouse has presented the affidavit of Roslyn Hinton, which explains that Lighthouse opposes all unemployment claims where the employee is discharged for cause. Additionally, Hinton states that within a year of Harris's termination, Lighthouse opposed payment of unemployment compensation of fourteen former employees because they were terminated for cause. This statement is supported by personnel records submitted by Lighthouse. Therefore, the court finds that Lighthouse has proffered a legitimate non-retaliatory reason for opposing Harris's MDES application.

Next, the burden shifts to Harris to produce evidence indicating that Lighthouse's proffered reason is merely a pretext. Beyond a conclusory statement in her response, Harris has not produced any evidence supporting pretext. Accordingly, because Harris has failed to make the requisite showing as to each of the elements of a prima facie case of retaliation, and since the defendants have shown a valid non-retaliatory reason for opposing her MDES application, the court finds the defendants' motion for summary judgment is well-taken.

**B. State Law Claims**

Harris also asserts claims under Mississippi law for negligent and intentional infliction of emotional distress.

a. Negligent Infliction of Emotional Distress

In her response to the motion for summary judgment, Harris did not address the issue of negligent infliction of emotional distress. Nevertheless, any such claim fails because Harris has not pointed to evidence that she suffered some demonstrable harm. *See Community Bank, Ellisville v. Courtney*, 884 So.2d 767, 775-76 (Miss. 2004) (finding evidence of emotional distress insufficient where the only evidence was plaintiff's testimony about stomach problems).

b. Intentional Infliction of Emotional Distress

Next, "meeting the requisites of a claim for intentional infliction of emotional distress is a tall order in Mississippi," *Riley v. F.A. Richard & Assocs.*, 16 So.3d 708, 719 (Miss. App. 2009) (citations omitted), and such claims "will not ordinarily lie for mere employment disputes." *Nuwer v. Mariner Post–Acute Network*, 332 F.3d 310, 316 (5th Cir. 2003) (quoting *Lee v. Golden Triangle Planning & Dev. Dist., Inc.,* 797 So.2d 845, 851 (Miss. 2001)). "[O]nly where the conduct has been so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" will courts impose liability. *White v. Walker*, 950 F.2d 972, 978 (5th Cir. 1991) (applying Mississippi law). Finally, "mere insults, indignities, threats, annoyances, petty oppression or other trivialities" are not actionable in Mississippi. *Jenkins v. City of Grenada, Miss.*, 813 F. Supp. 443, 447 (N.D. Miss. 1993). Indeed, "'[o]nly in the most unusual cases does

the conduct move out of the realm of an ordinary employment dispute into the classification of extreme and outrageous, as required for the tort of intentional infliction of emotional distress.'" *Grice v. FedEx Ground Package Sys., Inc*., 925 So.2d 907, 912 (Miss. Ct. App. 2006) (quoting *Prunty v. Arkansas Freightways, Inc*., 16 F.3d 649, 654 (5th Cir. 1994)).

In her response, Harris charges that Brown and Lighthouse "actively and intentionally attempted to destroy [her] livelihood . . . and [that of] her family in response to her perfectly valid complaints against Brown." Harris points to retaliatory write ups, false write ups, her being terminated, and denial of unemployment benefits. Even viewing the evidence in the light most favorable to Harris, the court finds that the facts in this case do not approach actions that could be described as "atrocious" or "utterly intolerable in a civilized community." *White*, 950 F.2d at 978. Accordingly, the court finds the plaintiff has not produced evidence sufficient to defeat summary judgment as to this issue.

Based on the foregoing, the court concludes that the defendant's motion for summary judgment should be granted with respect to all of Harris's claims.

### 3. Motion to Reopen Discovery

On July 11, 2011, Harris filed a motion to reopen discovery. Harris argues that the defendants failed to produce and/or supplement discovery. Specifically, the defendants served supplemental responses to discovery, including videos and a surveillance report, approximately one month after the close of discovery. Harris argues that some of the new discovery responses contradict sworn testimony of "key Casino employees." Further, Harris complains that her

counsel did not receive notice of the existence of the videos and report until after the defendants filed their motion for summary judgment.

The defendants produced the following supplemental discovery:

1. Procedure Violation- Niya Harris observed using cell phone while on company property on August 16, 2009, bates-labeled GRB-000369;

2. Sexual Harassment Training Video, bates-labeled GRB-000370;

3. Video of interviews conducted by Roslyn Hinton with Glynda Williams, Jeraldine Smith and Niya Harris, bates-labeled GRB-000371; and

4. Surveillance video showing Niya Harris using her cell phone on August 16, 2009, while on company property, bates-labeled GRB-000372.

Harris explains that the surveillance video is important because it contains footage of the cell phone incident for which she was fired and illustrates misapplication of Lighthouse's cell phone policy. Next, Harris argues that the video interview of Smith is previously undisclosed evidence of Hinton's failure to investigate the sexual harassment. Harris further asserts that the Procedure Violation document was responsive to her December 2010 discovery requests. Apparently, a surveillance video operator prepared this form, and his identity has not been disclosed. Finally, Harris points out that her discovery requests specifically directed Lighthouse to produce surveillance videos, and the defendants denied there were any in their possession.

The court finds the motion should be denied. It is clear that the information and the additional discovery sought relate to Harris's sexual harassment and retaliation claims, both of which are clearly time-barred. Because the court has determined that summary judgment should be granted as to these claims, the instant motion is denied.

**IT IS, THEREFORE, ORDERED:**

1. That the defendants' motion to strike is **GRANTED IN PART AND DENIED IN PART**;

2. That the defendants' motion for summary judgment is **GRANTED**;

3. That the plaintiff's motion to reopen discovery is **DENIED**.

**SO ORDERED THIS** 29th day of August, 2011.

                                            **/s/ David A. Sanders**
                                            **U. S. MAGISTRATE JUDGE**